Hon. John R. Beno Colorado State Senate State Capitol Denver, Colorado 80203
Dear Senator Beno:
This is in response to your request dated January 23, 1980 for my opinion on Senate bill 65, "Concerning the Division of Women, and Providing for the Creation Thereof and Making an Appropriation Therefor."
QUESTION PRESENTED AND CONCLUSION
Specifically, you asked whether Senate bill 65 is within the Governor's Call. My response is that the bill is not within the call and because the bill is neither a revenue raising bill nor an appropriation, article V, section 7 of the Colorado Constitution prohibits the general assembly from enacting this bill.
ANALYSIS
Senate bill 65 proposes to create a new division within the Department of Regulatory Agencies called the Division of Women. The present Colorado Commission on Women would be abolished by the bill and a new state commission on women would be created in the Division of Women.
The only two call items which might apply to Senate bill 65 are items 3 and 4 in the Governor's January 11, 1980 Call. Those items state:
 3. To change the termination date of the Colorado Commission on Women by amending Colorado Revised Statutes 1973, 24-34-104.
 4. To provide for Senate confirmation of the members of the Colorado Commission on Women.
It is apparent that Senate bill 65 does not come within either call item. The bill creates an entirely new state agency and neither changes the termination date of the Colorado Commission on Women nor provides for Senate confirmation of its members.
Article V, section 7 of the Colorado Constitution provides, in relevant part, that "in even numbered years, the general assembly shall not enact any bills except those raising revenue, those making appropriations, and those pertaining to subjects designated in writing by the Governor during the first 10 days of the session." This provision was added to the constitution in 1950. The governor also has the power to convene a special session of the general assembly "by proclamation, stating therein the purpose for which it is to assemble, but at such special session no business shall be transacted other than that specially named in the proclamation." Colo. Const. article IV, section 9. Although the language of the two constitutional provisions differs, court decisions and attorney general opinions regarding special session proclamations are relevant by analogy to questions arising under the Governor's Call in an even numbered year.
There are relatively few Colorado Supreme Court decisions and attorney general opinions analyzing whether a particular bill is within the scope of the Governor's Call. As a whole, the decisions indicate that such questions are considered on a case-by-case basis and the results are dependent on the facts of each case.
The supreme court decisions seem to fall into two categories. Three nineteenth century opinions took a narrow view of the Governor's power to specially name the business to be transacted in a special session. In re Governor's Proclamation,19 Colo. 333, 35 P. 530 (1894); In re Amendments of LegislativeBills, 19 Colo. 356, 35 P. 917 (1894); and People exrel. McGaffey v. District Court, 23 Colo. 150, 46 P. 681
(1896). Even under this nineteenth century perspective, however, the Governor's discretion to submit a narrow call item to the legislature was recognized. In the case of In re Amendmentsof Legislative Bills, supra, the item read: "To provide to reduce the penalties and interest on delinquent taxes to one-half the present rates." The court agreed that the legislature was limited by the call to considering the reduction of penalties and interest on delinquent taxes, but the "one-half" figure specified in the item was interpreted to be advisory language. The legislature was free to decide whether and how much the penalties and interest should be reduced.
Applying this analysis to call items 3 and 4, I find that language of the items is within the Governor's discretionary power and is binding on the legislature. If, for example, the Governor had specified in item 3 that the termination date of the commission should be changed to July 4, 1981, that date would be advisory language.
In its twentieth century decisions, the court has upheld, and in one case required, narrow call items. In Denverand Rio Grande Railroad v. Moss, 50 Colo. 282, 115 P. 696
(1911), the court actually held that a Governor's Call item entitled "To enact any and all legislation relating to or in any wise affecting corporations, both foreign and domestic of aquasi-public nature" was too broad and, since it was too broad, a railroad fencing statute enacted pursuant to the call item was held unconstitutional. The court held that the constitution required the Governor to draft more narrow call items:
 The duty having been placed on the Governor to specially name the legislation in which the General Assembly shall engage when called together in special session, that duty can only be discharged by him. It may not be left to the General Assembly to choose for itself the subject-matter upon which, at such sessions, it will legislate.
Id. at 285, 115 P. at 697.
The Moss, supra, decision is criticized in 1 Sands, Sutherland's Statutory Construction, section 5.04 (1972 ed.). See footnote 5 at p. 130 and accompanying text. The treatise expresses a preference for general call items and endorses the view that Governor may phrase his call in either narrow or general terms because "the constitutional provisions were intended to be a limitation on the power of the legislature, and not upon the power of the governor." Continuing, the treatise states:
 Since the governor can either restrict the scope of legislative action, or can extend it to many subjects, it should make no difference whether the language he uses describes the subjects by general language, or by language designating in minute detail the subjects he believes to need attention. The constitutional restrictions were inserted for the purpose of giving notice to the public that certain subjects would be placed before the legislature, so that the interested public could be present to discourage or support the contemplated legislation.
Sands, supra, section 5.04 at page 129.
The two Colorado Supreme Court cases which have been decided since the Moss case have invalidated legislation which has gone beyond the scope of a narrow call item. In reInterrogatories of Senate, 94 Colo. 215, 29 P.2d 705 (1934);People v. Larkin, 183 Colo. 363, 517 P.2d 389 (1973). The 1934 Interrogatories case involved a Governor's Call item concerning the provision of revenue for the relief of the unemployed, destitute and suffering. A House bill contained what the court described as "an elaborate code" regulating liquor and a minor provision diverting funds raised by liquor control into the old age pension fund and setting aside amounts for a state relief committee. In finding that the bill went beyond the Governor's Call, the court said:
 It follows that since the chief purpose of House Bill No. 45 is the enactment of a comprehensive liquor control code and the raising of revenue for the relief of the suffering and destitute is but a remote incident thereof, the act is not within the Governor's proclamation and could under no circumstances be valid if passed by the present Extraordinary Session.
In re Interrogatories at 217, 29 P.2d at 706. In theLarkin case, supra, the call item was "legislation concerning safety inspection by the Division of Labor of the Department of Labor and Employment." The general assembly passed "The Explosives Act" which contained a provision making it a felony for any person to possess an explosive device with the intent to use it for an unlawful purpose. The court struck the criminal provision as not coming within the scope of the Governor's Call item.
Several attorney general opinions in the last 45 years have held that the legislature has no power to enact a statute which is broader than a narrow call item. I will briefly summarize a few of those decisions.
A March 28, 1936 opinion concerned a Governor's Call item asking the legislature to raise revenues for social security purposes by providing for an excise tax upon the use, storage or other consumption of tangible property. The opinion concluded that it would be beyond the province of the special session for the legislature to enact any other revenue measure except the one specified by the Governor.
In an opinion dated November 29, 1945, the attorney general found that a call item reading "to consider legislation increasing the amounts provided for classroom units of the public schools, and providing revenue therefore" did not permit the general assembly to fund a special study of teachers' salaries and conditions in the state school districts. The opinion reached this conclusion despite the fact that the Governor's message to the general assembly had urged such a study.
See also attorney general's opinion dated January 16, 1952 finding that a bill concerning convict labor was not within the subjects designated by the Governor during a short session. This opinion was written during the first short session held after the 1950 constitutional amendment was adopted and it lists the items on the Governor's Call. Significantly, the call contained both general items (e.g., "relating to the conservation of oil and gas") and very specific items (e.g., "amending section 18, chapter 55, 1935 Colorado Statutes Annotated, as amended, relating to stenographers and special officers for district attorneys").
A March 10, 1976 attorney general's opinion concluded that substantive amendments to the sunshine law did not come within a call item entitled "duties of the secretary of state." Finally, in a May 17, 1978 attorney general's opinion, the Governor was advised that it was within his authority to convene a special session for the sole purpose of changing the effective date of a statute which was not yet in effect.
The nineteenth century cases cited above indicate that there are some circumstances in which the court would construe a call item to uphold a bill. These cases are discussed at length in the attorney general's opinion to the Governor dated May 17, 1978. (Copy attached.) Suffice it to say that three exceptions have been recognized: (1) conforming amendments to statutory provisions not mentioned in a narrow call item have been permitted where necessary to effectuate the Governor's intent; (2) specific numbers or figures, such as the amount by which penalties and interests are to be reduced, are advisory only; and (3) a generally phrased subject matter is not necessarily limited by appending a "laundry list" of statutory sections to be amended.
In my opinion, none of these exceptions applies to call items 3 and 4.
SUMMARY
To summarize my conclusions, Senate bill 65 is not within the Governor's Call. The Governor has the discretion to narrowly draft call items and there is no authority for the general assembly to enact Senate bill 65.
Very truly yours,
 J.D. MacFARLANE Attorney General
GOVERNOR LEGISLATIVE BILLS WOMEN
S.B. 65 (1980)
Colo. Const. art. V, § 7
EXECUTIVE BRANCH Governor, Office of REGULATORY AGENCIES, DEPT. Commission on Women LEGISLATIVE BRANCH Senate General Assembly
Governor has discretion to draft narrow call item and S.B. 65 (1980 Session) was not within the scope of items 3 or 4 on the Governor's January 11, 1980 Call.