Honorable Jerry Kopel Colorado House of Representatives Denver, Colorado 80203
Dear Representative Kopel:
I am writing in response to your March 26, 1984 letter requesting an attorney general's opinion on whether H.B. 1108 (1984 session), in either its original or reengrossed revised form, violates article V, sections 17 and 21 of the Colorado Constitution.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Whether section 7 of the original version of H.B. 1108 violates article V, section 21 of the Colorado Constitution?
2. Whether H.B. 1108, in its reengrossed revised form, violates article V, section 21 of the Colorado Constitution?
3. Whether the original purpose of the bill was amended or altered by the Senate in violation of article V, section 17 of the Colorado Constitution?
As to each of these questions, my conclusion is "no."
ANALYSIS
The title of H.B. 1108, as originally introduced and at the present time, is "A Bill for an Act Concerning Mandatory Motor Vehicle Insurance." The bill was extensively amended on the Senate floor on March 16, 1984. The original bill: (1) amended various statutory provisions relating to the effect of the mandatory motor vehicle insurance requirement on motor vehicle registration, renewal, and cancellation procedures; (2) provided sanctions for the false affirmation of the existence of insurance; and (3) added a provision to the automobile policy regulations, sections 10-4-601 to 609, C.R.S. (1973 1983 Supp.), to prohibit, under certain circumstances, the nonrenewal of an automobile insurance policy. In addition, the original version of the bill amended the Colorado Auto Accident Reparations Act, sections 10-4-701 to 723, C.R.S. (1973 1983 Supp.), to extend the payment period for lost income or essential services benefits. The March 16 Senate amendments not only further revised the motor vehicle registration procedures and requirements, but made additional changes relating to mandatory insurance coverage and benefits and increased the monetary threshold limitation on tort actions against persons covered by such insurance.
(I II)
Article V, section 21, of the Colorado Constitution reads, in pertinent part, as follows:
 No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title . . . .
This provision requires both that a bill contain only one subject and that the one subject be clearly expressed in the title. Its purposes are to prevent logrolling, i.e., the "joining in the same act / of / disconnected and incongruous matter,"In re Breene, 14 Colo. 401, 404, 24 P. 3 (1890), and to provide full notice to the legislators and the public of the contents of the bill. Catron v. Board of CountyCommissioners, 18 Colo. 553, 33 P. 513 (1893); In reBreene, supra. This provision must be liberally construed "so as to avert the evils against which it is aimed and at the same time avoid unnecessarily obstructinglegislation." In re Breene, supra,14 Colo. at 404 (emphasis added). See also, Catronv. Board of County Commissioners, supra.
The standards to be used in determining whether a bill addresses only one subject are well-established. There can be no union in the Act of incongruous matter, having no necessary connection or relation. Catron v. County Commissioners,supra; Harding v. People, 10 Colo. 387,15 P. 727 (1887). The matter treated in the Act must be germane, relevant, and appropriate to the subject expressed in the title.Dahlin v. City County of Denver, 97 Colo. 239,48 P.2d 1013 (1935); Roark v. People, 79 Colo. 181,244 P. 909 (1926); Dallas v. Redman, 10 Colo. 297, 15 P. 397
(1887). Generality in the title of a bill is commendable and particularity is not required. California Co. v.State, 141 Colo. 288, 348 P.2d 382 (1959), appealdismissed, 364 U.S. 285, reh'g denied, 364 U.S. 897
(1960); Roark v. People, supra;Catron v. County Commissioners, supra. The significant term in the constitutional provision is "clearly."
 (W)e are bound to assume that the word "clearly" was not incorporated into the constitutional provision under consideration by mistake. It appears in but few of the corresponding provisions of other state constitutions — a fact that could hardly have been unobserved by the convention. That this word was advisedly used, and was intended to affect the manner of expressing the subject, we cannot doubt. The matter covered by legislation is to be "clearly," not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning aided by superior rhetoric will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect as well as the trained legal mind. Nothing unreasonable in this respect is required, however; and a matter is clearly indicated by the title when it is clearly germane to the subject mentioned therein.
In re Breene, supra, 14 Colo. at 406
(emphasis original). The import of this analysis is that a person reading the title of a bill must have reasonable notice of the contents of the bill.
As previously noted, H.B. 1108 originally was, and remains, entitled "A Bill for an Act Concerning Mandatory Motor Vehicle Insurance." The title is broad enough to encompass all of the provisions contained in the original version of the bill. The legislature may, within reason, make the title of a bill as comprehensive as it chooses, thereby covering legislation relating to many minor but associated matters. In reBreene, supra 14 Colo. at 405. For instance, a bill entitled "An Act in Relation to Municipal Corporations" could provide for the organization, government, powers, duties, offices, revenues and "all other matters" pertaining to such corporations. Id. 14 Colo. at 405. See alsoAiry v. People, 21 Colo. 144, 40 P. 362 (1985), (held: where the purpose of an Act was to compensate county and precinct officers, fees collected by such officers were a legitimate aspect of such compensation and provisions for their disposition could be included in the Act).[1]
Under the foregoing analysis, "A Bill for an Act Concerning Mandatory Motor Vehicle Insurance" is broad enough to cover not only the provisions in the original version of the bill relating to the methods of ensuring that drivers do in fact obtain and maintain mandatory motor vehicle insurance but also the provisions, specifically section 7 thereof, dealing with coverage requirements of such insurance. Similarly, the subject matter and title of the bill are broad enough to encompass the monetary threshold on tort actions addressed in the reengrossed revised bill because such limitation applies to suits against persons covered by mandatory motor vehicle insurance.
(III)
Article V, section 17 of the Colorado Constitution reads as follows:
 No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.
The primary purpose of this provision is to prevent the introduction of a bill dealing with a certain subject, which is later amended to relate to an entirely different subject.In Re Amendments of Legislative Bills, 19 Colo. 356,35 P. 917 (1894); People v. Brown, 174 Colo. 513, 485 P.2d 500
(1971). Article V, section 17 is "like other constitutional inhibitions upon the exercise of legislative power, . . . not intended to unnecessarily embarrass proper legislation . . . ."In re Amendments, supra, 19 Colo. at 358. The evil sought to be avoided by this constitutional provision was exemplified in In the Matter of House Bill No. 231,9 Colo. 624, 21 P. 472 (1886), where the original bill sought the creation of Logan County from territory included within Weld County but the amended bill attempted to create Montezuma County from territory included within La Plata County.
The original purpose of a bill is to be ascertained from the title, the text of the bill as introduced, and the record of the legislative proceedings. People v. Brown,supra, 485 P.2d at 524; In Re Amendments ofLegislative Bills, supra, 19 Colo. at 359.
As previously discussed, the title of H.B. 1108 was and is broad enough to cover a variety of matters concerning mandatory motor vehicle insurance. In addition, the text of the original bill dealt with at least two aspects of such subject, i.e., the implementation of procedures to ensure that compulsory insurance coverage is obtained and maintained by owners of motor vehicles [2] and the coverage required in a "complying policy" under the Colorado Accident Reparations Act. Amendments to additional sections are permitted as long as the general purpose of the original bill is kept in mind and adhered to.In re Amendments, supra.[3]
The amendments at issue here, although affecting additional provisions of the Colorado Auto Reparations Act, do not deal with an entirely different subject from the original bill. Benefits and required coverage were specifically addressed in the original bill and the further consideration of such issues cannot be said to be unrelated to the purpose of the original bill. Although the amendment dealing with a threshold on tort actions does not deal with an issue specifically addressed in the original bill, it is encompassed by the broad title and does not deal with an entirely different subject as did the amendment in In theMatter of House Bill No. 231, supra.
SUMMARY
It is my opinion that H.B. 1108, in its original and in its reengrossed revised form, would not violate either article V, section 17 or article V, section 21, of the Colorado Constitution.
Very truly yours,
 DUANE WOODARD Attorney General
INSURANCE LEGISLATIVE BILLS STATUTES MOTOR VEHICLE LICENSE AND REGISTRATION
Colo. Const. art. V, § 17
Colo. Const. art. V, § 21
LEGISLATIVE BRANCH House of Representatives
A bill entitled "A Bill for an Act Concerning Mandatory Motor Vehicle Insurance" is broad enough to encompass a variety of matters relating to such insurance without violating article V, section 21 of the Colorado Constitution. A broadly entitled bill which originally deals with a variety of related matters may be amended during the legislative process to cover additional related matters as long as the purpose of the bill is adhered to.
[1] Although the Breene court ultimately found that the challenged provisions which imposed fines upon county and state treasurers for loaning public money for private purposes were not encompassed within a bill, the title of which dealt specifically with the assessment and collection of revenue, the court stated that the provisions at issue would have been valid had the bill been entitled "An Act in Relation to Revenue."14 Colo. at 407.
[2] Section 10-4-705, C.R.S. (1973).
[3] Even where subject legislation has a restrictive title and has not been finally adopted, its title can be amended to cover additional provisions. In re Amendments,supra.